J-A23030-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.J.N., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.K.N., JR., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 744 MDA 2022 |

Appeal from the Decree Entered May 17, 2022
In the Court of Common Pleas of York County Orphans' Court at No(s):
2022-0032A

BEFORE:  BOWES, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.:  **FILED: NOVEMBER 7, 2022**

J.K.N., Jr. ("Father") appeals from the May 17, 2022 decree that terminated involuntarily his parental rights to his child, Je.J.N., born in October 2021.  We affirm.

We provide the following background.  Je.J.N. has two older siblings, Jai.J.N., born in March 2019, and Ja.J.N., born in October 2020; all three children share the same parents:  Father and D.K. ("Mother").[1]  The family

---

[*] Former Justice specially assigned to the Superior Court.

[1] We note that since all three children have the same initials, we included enough additional letters from their first names for ease of identification within this memorandum.  Regarding the two older children, CYF sought termination of Father's parental rights to them at the same time it filed the initial petition concerning Je.J.N., discussed *infra*.  The orphans' court granted the petitions as to the two older siblings following a termination hearing on March 25, 2022.  CYF also sought termination of Mother's rights as to all three children and the orphans' court ultimately granted all three petitions.  Mother has not appealed
*(Footnote Continued Next Page)*

first came to the attention of the York County Office of Children, Youth and Families ("CYF") in December 2020, before Je.J.N. was born. The referral regarded a non-accidental and unexplained parietal skull fracture to Ja.J.N., as well as concerns regarding domestic violence between Mother and Father and stable housing and employment. Jai.J.N. and Ja.J.N. were ultimately adjudicated dependent and placed into kinship care before Je.J.N. was born. During the course of the dependency cases concerning the older children and her pregnancy with Je.J.N., Mother maintained to CYF that she was not in contact with Father, that she was unaware of his whereabouts, and that she did not know the identity of the unborn child's father. Despite this, Father was present at the hospital when Je.J.N. was born in October 2021, and, as recognized by Mother and noted hereinabove, is the biological father of Je.J.N.

In anticipation of the birth of Je.J.N., CYF determined that the "concerns regarding the skull fracture, domestic violence, and stability of housing persisted." N.T., 5/17/22, at 19-20. As a result, CYF filed an application for emergency protective custody after he was born and Je.J.N. was placed into care.[2] Je.J.N. was adjudicated dependent in November 2021; Father was not

---

those decrees. Father has appealed from the decrees terminating his parental rights as to Jai.J.N. and Ja.J.N. at dockets 603 MDA 2022 and 604 MDA 2022. Father sought to consolidate those appeals with the instant appeal but this Court denied that motion.

[2] Je.J.N. remains in the same foster home he was placed in the day after he was born. Shortly after his placement, Jai.J.N. and Ja.J.N. joined him there. To this day, all three boys remain in that foster home. The foster parents, K.L. and D.L., are a pre-adoptive resource for all three children.

- 2 -

present at the adjudicatory hearing. Since Father's whereabouts remained unknown throughout the dependency cases of his three children, his only goal was to contact CYF to determine what services would be needed. On January 27, 2022, the police searched the home where Mother and Father were then living. As a result, the Commonwealth filed multiple drug charges against Mother and Father.

Father's first contact with CYF was when he appeared at the next status review hearing, which was held on February 7, 2022. At that time, Father indicated that he was living with Mother and that he wanted to work towards reunification. The court ordered him to obtain housing and employment, follow through with the criminal process, contact CYF to develop goals and services, and have regular visitation with his children. Upon contacting CYF, the agency advised Father that his goals were to: (1) contact and cooperate with CYF; (2) maintain stable income and housing; (3) cooperate with an in-home team for parenting and budgeting; (4) attend consistent visitation with his children; (5) complete domestic violence treatment; and (6) resolve his criminal charges.

On February 9, 2022, CYF filed a petition to terminate the parental rights of Father as to Je.J.N. pursuant to 23 Pa.C.S. § 2511(a)(2) and (4). The orphans' court held a hearing on the petition on March 25, 2022.[3] CYF

---

[3] At the hearing, Laura Smith, Esquire, represented all three children as guardian *ad litem* ("GAL") and legal counsel. We note with displeasure that Attorney Smith did not file a brief with this Court on behalf of Je.J.N.

presented the testimony of CYF caseworker Samuel Richard and K.L., the foster mother. Father testified on his own behalf. At the conclusion of the hearing, the orphans' court denied the petition because it did not find that the circumstances leading to placement could not or would not be remedied. It noted, however, that CYF could re-file under a more appropriate subsection.

On March 30, 2022, CYF did just that, filing a petition to terminate Father's parental rights as to Je.J.N. pursuant to § 2511(a)(1), (2), and (6). CYF also filed a petition to terminate Mother's parental rights. Once Je.J.N. turned six months old, CYF filed an amended petition to terminate pursuant to § 2511(a)(1), (2), (5), and (6). The orphans' court held a hearing on these petitions on May 17, 2022. CYF presented the testimony of the foster parents, D.L. and K.L., as well as Mr. Richard. Mother and Father were present at the hearing but chose not to testify.

Mr. Richards testified that Father's only contact with Je.J.N. following his birth was comprised of two supervised, one-hour visits, on April 11 and April 25, 2022. Father failed to attend the next scheduled visit and had not been in contact with CYF since the April 25 visit. Father's housing and employment status remained unknown. During the life of the dependency case, Father did not engage in any services and, as of the hearing, Father had not made any progress towards his goals.

At the conclusion of the hearing, the orphans' court issued a decree terminating Father's parental rights pursuant to § 2511(a)(6). The court also found that CYF had established sufficient grounds for termination pursuant to

§ 2511(a)(1), (2), and (5). Father filed a timely notice of appeal and concise statement pursuant to Pa.R.A.P. 1925(a)(2). The orphans' court filed a responsive Rule 1925(a) opinion directing this Court to its reasoning stated on the record at the conclusion of the May 17, 2022 termination hearing, as well as CYF's amended motion for judicial notice.

Father presents the following question for our consideration: "Did the Lower Court abuse its discretion and err as a matter of law in finding that the Agency met its burden to terminate Father's parental rights under 23 Pa.C.S.A. Section 2511(a)(1), (2), (5), (6) and 2511(b)?" Father's brief at 5.

We begin with our standard of review for matters involving involuntary termination of parental rights:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized [the appellate court's] deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (cleaned up). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G. & J.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation

omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." ***In re Adoption of T.B.B.***, 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

Termination of parental rights is governed by § 2511 of the Adoption Act and requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

> Our case law has made clear that under [§] 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [§] 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [§] 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

***In re L.M.***, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted).

Father argues that CYF failed to establish by clear and convincing evidence the statutory grounds for termination of his parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (6), and (b). ***See*** Father's brief at 15. We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***In re C.S.***, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*) (cleaned up). Termination is proper when the moving party proves grounds for

termination under any subsection of § 2511(a), as well as § 2511(b). **T.B.B.**, **supra** at 395. Thus, to affirm, we need only agree with the trial court as to any one subsection of § 2511(a), as well as § 2511(b). **See In re B.L.W.**, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*).

Here, the orphans' court terminated Father's parental rights pursuant to § 2511(a)(1), (2), (5), (6), and (b). Like the orphans' court, we will focus our analysis on § 2511(a)(6) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (6) In the case of a newborn child, the parent knows or has reason to know of the child's birth, does not reside with the child, has not married the child's other parent, has failed for a period of four months immediately preceding the filing of the petition to make reasonable efforts to maintain substantial and continuing contact with the child and has failed during the same four-month period to provide substantial financial support for the child.
>
> > . . . .
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

To satisfy the requirements of § 2511(a)(6), CYF was required to prove by clear and convincing evidence that: (1) Je.J.N. was a newborn child at the time the petition was filed; (2) Father knew of Je.J.N.'s birth; (3) Father did not reside with Je.J.N.; (4) Father and Mother are not married; and (5) "for a period of four months prior to the filing of the petition, Father ha[d] failed to make reasonable efforts to maintain substantial and continuing contact with [Je.J.N.] and to provide substantial financial support." **In re Adoption of M.R.B.**, 25 A.3d 1247, 1252 (Pa.Super. 2011) (citation omitted).

Father concedes that the first four prongs are met. **See** Father's brief at 24. Thus, the only aspect of the statute in dispute is whether Father made reasonable efforts to maintain significant and consistent contact with Je.J.N. and whether he provided substantial financial support in the four months preceding the filing of the petition. In that regard, Father argues as follows:

> It is acknowledged that Father did not make an effort to maintain a substantial and continuing contact until February 7, 2022. However, at that time, Father began making efforts. It is understood that 2511(b), which will be addressed in this brief, states in part that the [c]ourt shall not consider any efforts by the parent to remedy the conditions which are . . . first initiated subsequent to the giving of notice of the filing of the petition. Having said that, Father's efforts were somewhat limited by being incarcerated. However, once released, efforts were made. As far as providing support, Father was incarcerated and immediately upon release obtained employment.

Father's brief at 25.

The orphans' court concluded that Father had not made any effort to contact Je.J.N. and had not provided any financial support to the foster

parents. *See* N.T., 5/17/22, at 57-58. The court found Father's minimal contact with Je.J.N. compelling:

> The child is over 203 days old. In that period of time Father saw the child at the hospital and two hours, Mother saw the child at most . . . for 11 hours, which means that the foster parents have cared for the child for 4,861 hours compared to Mother's 11 hours of supervised contact and Father's two hours of supervised contact.

*Id*. at 55 (capitalization altered).

Here, the relevant four-month period was from November 30, 2021 to March 30, 2022. Father did not have any contact with Je.J.N. during this period, nor did Father provide any financial support to the foster parents or contact the foster parents to inquire about Je.J.N. Notably, Father's two visits occurred **after** both the filing of the instant petition and the relevant four-month period. Therefore, pursuant to § 2511(b), this late attempt to initiate contact with Je.J.N. cannot be considered.

We recognize Father's statement that his involvement with Je.J.N. and ability to provide financial support were hindered by his incarceration. The certified record is not entirely clear when Father was incarcerated. As far as we can glean, Father was evading police at the time Je.J.N. was born in October 2021. It was not until January 27, 2022, three months after Je.J.N. was born, that Father was incarcerated. He was thereafter released on bail but was re-incarcerated around February 24. Father remained incarcerated at the time of the March 25, 2022 hearing, but was no longer incarcerated as of at least April 22, 2022. We conclude that these sporadic periods of

incarceration were not insurmountable impediments to Father making reasonable efforts to have a substantial and consistent relationship with Je.J.N. or provide financial support.

The certified record demonstrates that during the relevant four-month period, Father did not make **any** effort to have a relationship with Je.J.N., despite his not being incarcerated for approximately half of that time. Father's two visits since then hardly constitute a reasonable effort to have a substantial and consistent relationship. Moreover, despite Father's claims that he retained employment upon release, he never provided documentation of such to CYF and never provided financial support to CYF or the foster parents for their care of Je.J.N. The record supports the credibility determinations and conclusions of the orphans' court. Accordingly, the orphans' court did not err in terminating Father's parental rights as to Je.J.N. pursuant to § 2511(a)(6).

Finally, we consider whether the orphans' court committed an error of law or abuse of discretion pursuant to § 2511(b). As explained above, § 2511(b) focuses on the needs and welfare of the child, which includes an analysis of any emotional bond that the child may have with Father and the effect of severing that bond. **L.M.**, **supra** at 511. The key questions when conducting this analysis are whether the bond is necessary and beneficial and whether severance of the bond will cause the child extreme emotional consequences. **In re Adoption of J.N.M.**, 177 A.3d 937, 944 (Pa.Super. 2018) (quoting **In re E.M.**, 620 A.2d 481, 484–85 (Pa. 1993)). It is important to recognize that the existence of a bond, while significant, is only

one of many factors courts should consider when addressing § 2511(b). *In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa.Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011)). Other factors include "the safety needs of the child, and . . . the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent." *Id*.

Father offers the following argument regarding § 2511(b):

> [I]t is acknowledged that there has been little evidence of the relationship and bond between Father and the children. It was Father's hope that by taking the necessary steps to address his issues, which he began to do, this would change. Unfortunately, he was not given this time by the [c]ourt. [CYF] began seeking to terminate Father's rights to this child on February 9, 2022. At that point the child was about three and a half months old. . . . It is argued that Father was never given a fair chance to parent this child. [CYF] failed to offer any assistance as to housing although . . . Father requested assistance. It is in the best interests of this child for Father to be given a chance.

Father's brief at 27-28.

As a general matter, Pennsylvania does not require the orphans' court to enlist a formal bonding evaluation or base its needs and welfare analysis upon expert testimony. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa.Super. 2011). "Common sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *In re T.S.M.*, *supra*, at 268. In weighing the bond considerations pursuant to § 2511(b), "courts must keep the ticking clock of childhood ever in mind." *Id*. at 269. "Children are young for a scant number of years, and we have an obligation to see to their healthy

development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." *Id*. A court cannot "toll the well-being and permanency" of a child indefinitely in the hope that a parent "will summon the ability to handle the responsibilities of parenting." *In re C.L.G.*, 956 A.2d 999, 1007 (Pa.Super. 2008) (*en banc*) (citation omitted).

In relation to § 2511(b), the orphans' court concluded that all the intangibles were provided by the foster parents. *See* N.T., 5/17/22, at 58. It found that a bond existed between Je.J.N. and the foster parents and that no bond existed between Father and Je.J.N. *Id*. at 58. The court observed that there was no evidence that Father had contact with Je.J.N. prior to the filing of the petition or that Je.J.N. would have any knowledge of Father as a parental figure. *Id*. at 58. The court again emphasized that Father's only contact with Je.J.N. since he was born was two hours of supervised visitation. *Id*. at 58-59. Ultimately, the court concluded that termination was in the best interests of Je.J.N.:

> We found that the child has done well in the foster home. It's in his best interest to have stability. No bond has existed with the parents. Making the child free for adoption will allow him to be adopted by the only parents he's ever known and he may remain in the care of the foster parents who also have custody of the minor child's two biological . . . siblings.

*Id*. at 60.

As noted, K.L. and D.L. are a pre-adoptive resource for Je.J.N. and his older brothers. D.L. testified that Je.J.N. has adjusted extremely well to their home and is bonded with D.L., K.L., and Ja.J.N. *Id*. at 6, 12. Based on

Father's lack of contact, Mr. Richards testified that Je.J.N. would not recognize him as a parental figure. *Id*. at 28. Instead, it is to D.L. and K.L. that Je.J.N. reaches as his caregiver. *Id*. at 46. Finally, Mr. Richards testified that termination would not negatively affect Je.J.N. *Id*. at 32-33.

We appreciate that Father now wishes to be a parent to Je.J.N. However, the certified record demonstrates that he has not made a meaningful effort to do so during this child's short life, and we cannot "toll the well-being and permanency" of Je.J.N. in the hope that Father "will summon the ability to handle the responsibilities of parenting." *In re C.L.G.*, *supra*, at 1007 (citation omitted). There is no evidence of a bond between Father and Je.J.N. and, as noted, Father has only spent two hours of supervised visitation time with Je.J.N. outside the day he was born. Father has not performed parental duties during any significant period. Rather, it is the foster parents who have provided a stable, loving environment that satisfies the developmental, physical, and emotional needs and welfare of Je.J.N. Moreover, the record bears out that Je.J.N. has formed a healthy bond with the foster parents and with his brother, Ja.J.N., who also lives with the foster parents. As such, the record supports the assessment of the orphans' court that Je.J.N. is best served by terminating the parental rights of Father in anticipation of adoption by K.L. and D.L.

Based on the foregoing, we affirm the decree terminating Father's parental rights.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/07/2022